**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>OREN SNOWDEN,<br><br>    Defendant. | 2:18-cr-00018-RCJ-GWF<br><br>**ORDER** |

Pending before the Court are Defendant Oren Snowden's Motion for Compassionate Release, (Dkt. 73), and Motion to Seal Medical Records, (Dkt. 74). For the following reasons, the Court denies the first motion, (Dkt. 73), and grants the second, (Dkt. 74).[1]

---

[1] The Government does not challenge Snowden's Motion to Seal Medical Records, (Dkt. 74), and under this Court's Local Rules, "[t]he failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to granting of the motion." LR 7-2(d).

I.      **Factual Background**

   A.   **Criminal History**

   Oren Snowden is currently serving a sentence of 105 months imprisonment at Springfield Medical Center for Federal Prisoners ("Springfield MCFP") for possession of a controlled substance with intent to distribute and for being a felon in possession of a firearm.  (Dkt. 43). Snowden's criminal history begins before his current incarceration, though.  In 2007, "Snowden committed felony possession of crack cocaine and marijuana with intent to sell, and was given a suspended sentence, but subsequently had his probation revoked and was sentenced to 30 days in jail and dishonorably discharged from probation."  (Dkt. 75 at 2 (quoting PSR ¶ 40)).  In 2011, "he committed felony possession of a firearm by a convicted felon and was sentenced to three years' imprisonment."  (*Id.* (quoting PSR ¶ 46)).  Snowden also has a number of misdemeanor convictions, including "for disturbing the peace, obstructing a public officer, assault with a deadly weapon, tampering with a vehicle, driving under the influence, public affray, giving false information to a police officer, possessing a drug not for interstate commerce, and traffic violations."  (*Id.* (quoting PSR ¶¶ 37–39, 41–45, 47)).

   B.   **Medical History**

   Snowden has "several serious health problems which increase his risk of contracting COVID and/or the severity of the disease if he should catch it."  (Dkt. 73 at 4).  At the root of his health problems "is his Type 1 diabetes," which has caused "a number of severe symptoms[.]"  (*Id.* at 5).  Although vaccinated against COVID, (*id.* at 2 n.2), Snowden "was hospitalized for COVID, spending 16 days on a ventilator, three months in the hospital," after which his kidney function "deteriorated into end stage kidney disease, such that he requires dialysis three times a week in

order to remain alive." (*Id.* at 2). Given these circumstance, Snowden claims that "[t]he Bureau of Prisons in general and Springfield MFCP specifically have both proven that they are not capable of providing adequate care for the intersection of COVID and these conditions," and that he "is prevented from exercising self-care due to the correctional setting." (*Id.* at 4).

## II.   Legal Standard

Generally, federal district courts "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010). But under the same section, a court may modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In those circumstances, a court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a)[2] . . . if it finds that . . . extraordinary and

---

[2]   The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
   (2) the need for the sentence imposed—
       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
       (B) to afford adequate deterrence to criminal conduct;
       (C) to protect the public from further crimes of the defendant; and
       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3) the kinds of sentences available;
   (4) the kinds of sentence and the sentencing range established for—
       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
           (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless

compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Importantly, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(ii).

The Sentencing Commission has explained that extraordinary and compelling reasons exist where "[t]he defendant is suffering from a terminal illness," meaning that the defendant is "suffering from a serious physical or medical condition . . .suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1. 13, cmt. n.1(A) (2018). While this portion of the Sentencing Guidelines is not "binding" on courts, it may "inform a district court's discretion" for such motions. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

---

of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
  (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement—
  (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
  (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

### III. Analysis[3]

Snowden argues that compassionate release under section 3582 is warranted because the risk of COVID in conjunction with his existing medical conditions constitute extraordinary and compelling reasons warranting a reduction according to the Sentencing Guidelines. (Dkt. 73 at 4–8). He also argues that he satisfies the factors of section 3553(a) because his "criminal history is not terrifically serious or extensive" and he "is not a danger to public safety." (*Id.* at 8–9). In response, the Government argues that, despite Snowden's existing medical conditions, due to Snowden's vaccination against COVID, extraordinary and compelling "circumstances no longer exist[]." (Dkt. 75 at 5–7). Additionally, the Government argues that the section 3553(a) factors "do not favor release." (*Id.* at 8). Because of Snowden's "lengthy and serious criminal history," the Government asserts that his release "would not protect the community, deter criminal conduct, or promote respect for the law." (*Id.*). The Court agrees with the Government.

**A. Snowden has not established extraordinary and compelling reasons that warrant a sentence reduction.**

The Sentencing Guidelines, which the Court finds instructive in ruling on Snowden's Motion for Compassionate release, explain that extraordinary and compelling reasons for sentence reduction exist where the defendant is suffering from a medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility[.]" U.S.S.G. 1B1. 13, cmt. n.1(A) (2018). But Snowden does not precisely claim that any of his current medical conditions (related to his Type 1 diabetes) present such a circumstance.

---

[3] Neither party contests that Snowden's administrative exhaustion requirements has been satisfied, (Dkt. 73 at 4); (Dkt. 75 at5), thus, the Court need not address that issue.

Instead, he argues that his health issues "increase his risk of contracting COVID and/or the severity of the disease if he should catch it," therefore "he cannot adequately care for [himself] in the context of a prison environment[.]" (Dkt. 73 at 4).

Courts facing similar requests have denied motions for compassionate release in the context of COVID finding that despite the fact that the defendant's "ailments present a higher risk for him, the prison appears able to lessen that risk and the number of vaccinated prisoners continues to rise[.]" *United States v. Johnson*, 2021 WL 1565780, at *2 (D. Nev. Apr. 21, 2021). The Court here is not persuaded that Springfield MFCP is unable to lesson the risk faced by Snowden,[4] who is now vaccinated against COVID, himself. Additionally, the Ninth Circuit has confirmed district courts' denials of compassionate release as a result of "the vaccine rollout" and the ability of one to engage in self-care through receipt of the vaccine. *See United States v. Lira*, 2022 WL 229303, at *1 (9th Cir. Jan. 25, 2022) ("The court acknowledged Lira's medical issues, but reasonably concluded that Lira had not shown extraordinary and compelling reasons for early release in light of the low incidence of COVID-19 infections at the prison where he is housed and the vaccine rollout.); *United States v. Swanson*, 857 Fed. App'x 411, 412 (9th Cir. Aug. 25, 2021) ("The district court's conclusions regarding the risk of reinfection with COVID-19 and the availability of a

---

[4] Snowden claims that "[a]ccording to [the Bureau of Prison's] self-reported statistics," Springfield MFCP "has experienced the highest number of COVID deaths of any [Bureau of Prisons] facility[.]" (Dkt. 73 at 7). To support this assertion, Snowden provides a broken link to data that would not longer be current as his motion was filed in September 2022. (*Id.* at 7 n.15). Regardless, Snowden concedes that "this statistic is mitigated by the fact that Springfield is a medical facility and might be expected to have a higher number of deaths than other prisons." (*Id.* at 7 n.17). Not only is Springfield MFCP's status as a medical facility a mitigating factor, but the Court is also convinced that it supports its finding that Springfield MFCP, as a medically equipped facility, is certainly able to lessen the risk faced by Snowden.

vaccine were not illogical, implausible, or without support in the record."). Accordingly, the Court finds that extraordinary and compelling reasons do not exist warranting Snowden's release.

> **B.  Snowden has not satisfied the factors set forth in section 3553(a) and poses a danger to the community.**

Snowden argues that he "is not a danger to public safety," (Dkt. 73 at 9), and that "the serious health problems faced by [Snowden] and his inability to protect himself while incarcerated, when combined with the other Section 3553(a) sentencing factors, warrants relief." (*Id.* at 8–9). The Government, on the other hand, argues that Snowden "is a danger to the community and the other 18 U.S.C. § 3553(a) factors do not favor release," (Dkt. 75 at 5), because his "criminal history is lengthy and serious." (*Id.* at 8). The Court agrees with the Government.

While Snowden characterizes his criminal history as "not terrifically serious or extensive," (Dkt. 73 at 9), the Court is convinced otherwise. Not only does Snowden have multiple felon criminal convictions for similar offenses, but he also has many misdemeanor convictions, evincing a general disrespect for the rule of law. This certainly is important to the Court's consideration under section 3553(a)(1). *See* 18 U.S.C. § 3553(a)(1) (explaining that the court shall consider "the nature and circumstances of the offense and *the history* and characteristics of the defendant" when determining an appropriate sentence (emphasis added)). Moreover, Snowden's propensity for legal infractions such as these indicate that he is "a danger to the safety of [] other person[s] or to the community[.]" *See* U.S.S.G. 1B1. 13(2). The Court agrees with the Government that Snowden's "attempt to rationalize and minimize his behavior, and his apparent lack of awareness for the harm he caused, do not favor reducing his sentence." (Dkt. 75 at 8). Therefore, the Court cannot grant Snowden's request for compassionate release.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release, (Dkt. 73), is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion to Seal Medical Records, (Dkt. 74), is **GRANTED**.

IT IS SO ORDERED.

Dated November 22, 2023.

_____
ROBERT C. JONES
United States District Judge